## REID v. DALLAS COUNTY.

### No. 4574.

Court of Civil Appeals of Texas. El Paso. June 2, 1948.

Rehearing Denied June 30, 1948.

S. P. Sadler and W. H. Reid, both of Dallas, for appellant.

Will R. Wilson, Jr., Dist. Atty., Douglas E. Bergman and Charles E. Long, Jr., Asst. Dist. Attys., Hamilton, Dyer & Shults, and Margaret A. Brand, all of Dallas, for appellee.

SUTTON, Justice.

This is an appeal from the 116th District Court of Dallas County.

Dallas County sued W. H. Reid individually and as temporary administrator of the estate of Ed Cobb, deceased, Mrs. Bessie Cobb, the community survivor of the estate of Ed Cobb, deceased, and herself,

and the Irving State Bank, to recover the sum of $51,809.15, claiming the same to belong to the tax funds of Dallas County and to have been collected as such by Ed Cobb, deceased, as the Assessor and Collector of Taxes of Dallas County. Reid, individually, Mrs. Bessie Cobb, community survivor, and the Irving State Bank disclaimed all interest in such fund. Reid as temporary administrator answered at considerable length with pleas to the jurisdiction of the District Court; the pendency of probate proceedings involving the fund in the Probate Court of Dallas County; numerous special exceptions; general and specific denials, all predicated on the assumption the fund is a part of the assets of the estate of Ed Cobb, deceased. A trial was had to the court without a jury and judgment rendered in favor of Dallas County for the title and possession of the fund and that the same be delivered by Reid and the bank to the County, and deposited to the tax account of the County in the Dallas National Bank as the County Depository; that the County take nothing as against Mrs. Bessie Cobb, community survivor; Reid individually and the Irving State Bank. From that judgment Reid as temporary administrator alone has appealed, and the controversy here, as it has at all times been, is between Reid as temporary administrator and the County.

Appellant has forty-eight points, many of which are from necessity grouped and presented together. They are all, as is his answer, predicated on the assumption the fund is an asset of the Ed Cobb estate.

We regard the case inherently as simple and without complications. If it has complications it is thought they were not originally there but have come as the result of injections. If the money was a part of the tax fund, $51,800 of which was in the possession of Ed Cobb at the time he died, which it was claimed by the County to be and so found and adjudged by the trial court, then there should be no difficulties encountered. The ownership and status of the fund at the time of Cobb's death is the sole issue tendered by the County's petition and is, of course, the controlling issue.

The trial court found from the facts the fund was collected by Ed Cobb, deceased, in his capacity as Assessor and Collector of Taxes of Dallas County, and received by him in payment of taxes as such Collector. The facts upon which such finding rests are overwhelming and conclusive, we think, and nothing appears to the contrary. Aside from the immediate facts surrounding this fund there are ample facts to support the finding and judgment of the trial court. We think it unnecessary to recite the events transpiring between 1935, and October 1, 1947, the date upon which Cobb became ill and from which illness he died the following day.

The immediate and pertinent facts are: It had been a long practice of Mr. Cobb to leave in his office his personal check or checks to cover the amount of cash taken out by him. Funds removed were placed in a large brown envelope. When the money was returned to the cash drawers, and so far as this record discloses, it invariably was, the checks were removed, except in the case now under consideration. On October 1, 1947, Mr. Cobb removed a large brown envelope similar to the one in which he kept cash when removed by him from the cash drawers. On that date he became ill and died the following day, Thursday, October 2nd. Early Monday morning, October 6th, Cobb's daughter, Mrs. Gwen Graul, tendered to the Irving State Bank of Irving, Texas, $51,800 in currency with the request and upon the understanding it be used to take up, or pay, her father's checks in the drawer in his office (the Tax Collector's office) and that it be devoted to no other purpose, saying the checks would be presented for payment during the day. The money was received and deposited to the credit of "Ed Cobb."

The County Auditor and the District Attorney made and caused to be made an audit of the books and accounts in the Tax Collector's office on Sunday, October 5, 1947. They found in the cash drawers of the office seventeen (17) checks drawn on the Irving State Bank each payable to Ed Cobb, Assessor and Collector of Taxes, and signed Ed Cobb individually, aggregating $51,809.15. The record discloses

Cobb ordinarily had in his personal account in the Irving State Bank a maximum of five or six hundred dollars during a month, occasionally amounting to around a thousand dollars, and diminishing to a small sum near the end of each month. The amount in the account on the date of Cobb's death was approximately $40.

The checks found in the cash drawers of the Tax Office were presented Monday, October 6, for payment, whereupon the Bank declined to pay them except "upon a proper court order." After a conference the District Attorney and Mr. W. H. Reid, the temporary administrator, himself an attorney, returned to Dallas and joined in an application to have Mr. Reid appointed temporary administrator of the estate of Ed Cobb, deceased. He was thus appointed and his powers defined in the order of appointment and authority given for the collection of the seventeen checks. They were presented on the order and paid, and as directed in the order the fund was transferred to the Dallas National Bank, which bank is the County Depository. The fund was placed to the credit of "W. H. Reid, Temporary Administrator of the Estate of Ed Cobb, Deceased, Special." Some difference of opinion arose between the District Attorney and Mr. Reid concerning the manner in which the deposit was made, the District Attorney taking the position the fund belonged to the Dallas County tax fund and should be so deposited. Reid declined and this suit followed.

Mrs. Bessie Cobb subsequently qualified as community survivor and contested the appointment of Reid, and those proceedings are pending on appeal to the District Court.

Mrs. Gwen Graul testified, over objection, in the trial of this case that on Wednesday morning, October 1, after her father was stricken ill, at his home in the sick room he delivered to her a large brown envelope and told her if anything happened to him to take up the checks in the drawer. She understood what he meant by that. On Saturday night, October 5, she opened the envelope and found therein the $51,800 in currency she later took to the Irving Bank. She testified further she went to the Tax Office Sunday morning

for the purpose of returning the money and taking out the checks but found the locks had been changed, the Auditor and District Attorney and other people there and she had no opportunity to take up the checks and sought advice of counsel which resulted in the visit to the Bank and the transactions there.

■■■ The above testimony of Mrs. Graul was objected to as being inadmissible under Art. 3716, Vernon's Statutes, and its admission assigned as error and briefed under a point. We think the point is not well taken, because as an heir she was bound and her interests determined by the judgment sought and was, therefore, a party within the meaning of the article, supra, and her testimony properly received when called by the opposite party. Prichard v. Bickley, Tex.Civ.App., 175 S.W. 2d 614, and the authorities there cited. Again the trial was to the court without a jury and the evidence altogether sufficient to sustain the finding and judgment of the court without the testimony of the witness, and if inadmissible, it will be presumed the court disregarded it and based the judgment on the admissible testimony unless it be shown, as it was not in the instant case, that the judgment rests on the inadmissible evidence.

■■■ Cobb was the Tax Assessor and Collector whether in his office, on the street, in his sick bed or elsewhere. All money received by him in payment of taxes belonged to the tax fund and the several departments of government for which collected. Money in his possession thus collected was in the possession of the County. The evidence in this case would hardly sustain the conclusion there had been a misapplication or appropriation of the fund by Cobb. Under the facts of this case the money was still the money of Cobb's office when he died and what Mrs. Graul and the Bank did could not alter or change the status of it. The fact it found its way to Cobb's personal account in the manner it did, did not affect or change the ownership of it. It must go without saying an administrator is not entitled to the possession of property which was not owned by the decedent at the time

of his death and that the Probate Court is without power to administer property not an asset of the estate. Moreover, under the finding of the trial court and the record Cobb was not entitled personally to the possession of this fund, nor did he assert title and possession thereto personally. The administrator's right of possession is no greater than was Cobb's at the time of his death. The Statute, Art. 3314, Vernon's Statutes, gives to the administrator the right to the possession of the estate only as it existed at the time of the death of the testator or intestate. This may, and does in certain instances, exclude the right of possession by the administrator to property properly and rightfully an asset of the estate. Lauraine v. Ashe, 109 Tex. 69, 191 S.W. 563; Lauraine v. Dickson Car Wheel Co., Tex.Civ.App., 198 S.W. 1103, e. r.; and to which many authorities might be added.

We have considered the various assignments and points and consider none of them well taken and that no error is demonstrated and the judgment of the trial court is affirmed.

PRICE, Chief Justice (concurring).

I concur in the disposition made of this case. The County not claiming under Cobb had a right to maintain this suit against the administrator of his estate. Red River County Bank v. Higgins, 72 Tex. 66, 9 S.W. 745; Schmitt, Administrator, v. Jacques, 26 Tex.Civ.App. 125, 62 S.W. 956, Wr. Den. In regard to the funds in question here it was not sought in the application for appointment of Temporary Administrator that the checks by which the fund in controversy was collected be taken possession of as assets of the estate of the deceased Cobb, but as the property of Dallas County. In my opinion under the order of appellant Reid's appointment he was not authorized to hold the fund as an asset of the estate. The order of his appointment provides:

"The temporary administrator shall immediately present these checks for payment to the bank on which they are drawn, obtain the proceeds of such checks and deposit same with the depository of Dallas County."

The Dallas National Bank was the depository of Dallas County on all relevant dates herein. The Dallas National Bank in its capacity as a depository was a public functionary. In another capacity it was a private banking house. I think it is too plain to justify discussion that whether proper or improper the order of the court was to deposit this money in the county depository to the credit of the county. In my opinion appellant breached this order when he deposited same to his own credit as Temporary Administrator in the bank, not in the bank as a county depository, but in the bank as a private institution. Courts do not ordinarily select where a fiduciary shall deposit funds which belong to the trust. If the funds belonged to Dallas County the proper functionary to hold same was the Dallas National Bank as county depository.

It is clearly reflected in the record, or in any event the finding is amply sustained thereby, that the $51,800 delivered to the Irving Bank by deceased's daughter was the identical fund held in trust by the deceased Cobb in his official capacity. It was certainly the legal duty of the estate of Cobb to account to the county for this $51,800. So long as same was held by the estate or a representative thereof it was a liability rather than an asset of the estate. The estate withholding the fund could have been held liable therefor; liable as a convertor thereof. Schmitt, Administrator, v. Jacques, supra.

It was a matter of vital concern that these funds be delivered to the owner thereof.

I concur in the affirming of the judgment.